08-3150-cv
Amore v. Novarro

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: July 16, 2009          Decided: June 22, 2010)

Docket No. 08-3150-cv

-------------------------------------

JOSEPH AMORE,

Plaintiff-Appellee,

- v. -

ANDREW NOVARRO,

Defendant-Appellant,

CITY OF ITHACA,

Defendant.*

-------------------------------------

Before:   SACK and B.D. PARKER, Circuit Judges, and GOLDBERG, Judge.**

Appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge).  The district court denied police officer Andrew Novarro's motion for summary judgment on a false arrest claim, ruling that Novarro was not entitled to qualified immunity for making an arrest pursuant to a state loitering statute that

---

* The Clerk of Court is directed to amend the caption as set forth above.

** The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

was published as part of the New York Penal Law at the time of the arrest but that had been held unconstitutional by the New York Court of Appeals eighteen years prior to the arrest. We conclude that the district court erred in deciding that despite the fact that the statute was still widely published as though it remained valid, it would have been clear to a reasonable officer in Novarro's position that making the arrest was unlawful. We therefore reverse the order of the district court and remand the cause with instructions to grant the summary judgment motion based on qualified immunity and to dismiss the complaint against Novarro.

Reversed and remanded.

JONATHAN M. BERNSTEIN, Goldberg Segalla LLP, Albany, NY, for Defendant-Appellant.

EDWARD E. KOPKO, Wiggins & Kopko, LLP, Ithaca, NY, (Guttman & Wallace Law Firm, Ithaca, NY, on the brief), for Plaintiff-Appellee.

SACK, Circuit Judge:

Defendant-Appellant Andrew Novarro, an Ithaca, New York policeman, appeals from that part of a memorandum decision and order dated March 28, 2008, by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., Judge) denying his motion for summary judgment on a false arrest claim brought by plaintiff-appellee Joseph Amore under 42 U.S.C. § 1983. The claim is based on Novarro's arrest of Amore pursuant to New York Penal Law Section 240.35(3), which, on its face, prohibits loitering in a public place for the purpose of

2

soliciting another person to engage in "deviate" sexual behavior.[1] Amore alleges that his apprehension constituted a false arrest because the statute, although then officially and unofficially published as currently effective law, had been ruled unconstitutional by the New York Court of Appeals eighteen years before.

The district court concluded that Novarro was not entitled to qualified immunity:  Amore had a clearly established constitutional right to be free from unlawful arrest, and it would have been clear to a reasonable officer in Novarro's position that making an arrest under section 240.35(3) after it had been held to be unconstitutional by the New York Court of Appeals in People v. Uplinger, 58 N.Y.2d 936, 460 N.Y.S.2d 514, 447 N.E.2d 62 (1983) (Mem.), was unlawful.

We disagree.  We conclude that Novarro is entitled to qualified immunity under these circumstances.  It was unreasonable to expect this police officer to know that a statute that was, and is, still on the books and being enforced had been

---

[1] At the time of Amore's arrest, the statute in question, N.Y. Penal Law § 240.35, read in pertinent part:

> [Criminal] Loitering
>
> A person is guilty of loitering when he:
>
> ....
>
>> 3. Loiters or remains in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature . . . .

Id.

3

held to be unconstitutional. We therefore reverse that part of the district court's order dismissing Novarro's motion for summary judgment on the false arrest claim based on qualified immunity, and remand the cause with instructions to grant the motion.

**BACKGROUND**

Plaintiff Joseph Amore met defendant Andrew Novarro on October 19, 2001, in a public park in Ithaca, New York. Novarro was there acting as an undercover police officer, watching for drug activity. Amore, not knowing who Novarro was or what he was doing, offered to perform a sexual act on him.

Novarro identified himself as a police officer and asked Amore for identification, which he produced. Novarro told Amore that he did not have a ticket to write out and would have to call for "backup," which he proceeded to do. Novarro later testified that he did so in part because he did not have an appearance ticket with which to charge Amore with loitering.

While they waited for another police officer to arrive, Novarro told Amore that he was being charged with "loitering for the purpose of deviant [sic[2]] sexual activity." Deposition of Andrew Novarro ("Novarro Dep.") at 20. Novarro explained to Amore that "they were cracking down on this kind of activity in the park." Deposition of Joseph Amore ("Amore Dep.") at 36.

---

[2] The statute refers to "deviate" sexual activity, see footnote 1, supra.

Novarro testified, and it is not disputed in the briefing of this appeal, that the New York police academy he had attended issues a copy of the New York Penal Law to every officer, and that most officers carry a copy of it with them on duty.[3] It is in the form of a looseleaf booklet containing the text of the Penal Law that is published by Gould Publications, Inc.[4] The Ithaca Police Department furnishes each of its officers with yearly updates consisting of a stack of substitute pages reflecting new laws that have been enacted during the previous year, or deleting laws that are no longer in effect. When the officers receive these yearly updates, they are "supposed to remove" those pages that have become outdated and insert into the booklet, in their stead, the substitute pages reflecting the current law. The booklet is unannotated, i.e., without interpretations, case law, or the like. When the backup officer arrived, he gave Novarro a copy of this version of the Penal Law, because Novarro had left his own copy in his office.

After consulting the booklet, Novarro issued Amore an appearance ticket. Novarro then released Amore from custody. The appearance ticket required Amore to appear in Ithaca City

---

[3] There are multiple New York police academies. From the portions of his deposition testimony that have been incorporated into the record on this appeal, it appears that Novarro received his police training at the Corning Community College. See http://criminaljustice.state.ny.us/ops/training/zoneacademies/zone_12.htm (last visited April 19, 2010).

[4] Now "LexisNexis Gould Publications." See http://www.lexisnexis.com/gould/ (last visited April 19, 2010).

Court to answer a charge of "loitering" in violation of New York Penal Law § 240.35(3).

Novarro then had Amore formally charged with a violation of that offense. Accusatory Instrument, No. 01-13431 (Ithaca City Ct. Oct. 19, 2001).

Some time later, the city prosecutor informed Novarro that Amore had moved to dismiss the charge against him based on People v. Uplinger, a 1983 ruling by the New York Court of Appeals holding, in a memorandum decision, that the loitering statute pursuant to which Amore had been arrested, N.Y. Penal Law § 240.35(3), was unconstitutional. The city prosecutor told Novarro that she therefore could not continue the prosecution. It is undisputed that Novarro was unaware that the statute had been held to be unconstitutional prior to this conversation.

On November 7, 2001, the prosecutor, as she had told Novarro she would, moved to dismiss the charge against Amore based on Uplinger. The Ithaca City Court granted the motion on that basis. The court observed that it was "puzzling" that the statute continued to be published in the McKinney's Consolidated Laws of New York Annotated -- an annotated compendium of New York statutes that is separate from, and more formal and complete than, the unannotated booklet provided to Novarro and other officers by the police academy -- to the present day "as if it is still a viable statute." People v. Amore, No. 01-36459 (Ithaca City Ct. Nov. 15, 2001). "It is hard to understand why the

6

Legislature would continue this statute on the books, given that it is now close to 20 years since it was determined to be unconstitutional." Id.

Some two and one-half years later, on February 12, 2004, Amore filed a complaint in the United States District Court for the Northern District of New York against Novarro and the City of Ithaca for damages pursuant to 42 U.S.C. § 1983. His claims against Novarro were for false arrest, malicious prosecution, abuse of process, and violation of his right to equal protection. His claims against the city were made pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), for failure to train city employees and for maintaining an improper policy, custom or practice of permitting officers to make arrests under the unconstitutional statute.

The defendants moved to dismiss the complaint. Amore opposed the motion, filing a cross-motion for partial summary judgment on the issue of liability.

On March 28, 2008, the district court denied Amore's cross-motion for summary judgment with respect to all claims, and, treating the defendants' motion as a motion for summary judgment, granted the defendants' motion in part and denied it in part. The district court granted the motion on the malicious prosecution, abuse of process, and equal protection claims against Novarro, and the maintenance of an improper policy or custom claim against the city. See Amore v. City of Ithaca, No.

7

04 Civ. 176, 2008 U.S. Dist. LEXIS 26035, *10-*13, *21-*22 (N.D.N.Y. Mar. 28, 2008).[5] None of those claims are at issue on this interlocutory appeal.

The district court denied summary judgment on the false arrest claim, however. See id. The court reasoned that Novarro lacked probable cause to arrest Amore under section 240.35(3) because the New York Court of Appeals had declared that statute unconstitutional in Uplinger. Id. at *14-*16.

The district court conceded that such a situation presents a "difficult choice" for a police officer because "[a] common sense reading of [§ 240.35(3)] would place [Amore's] actions squarely within the purview of [that provision]." Id. at *20-*21. It also acknowledged that "Novarro would have had to conduct legal research or seek expert advice in order to discover the statute's invalidity." Id. at *21.[6] The court concluded nonetheless that Novarro was not entitled to qualified immunity with respect to the false arrest claim because Amore's "right to be free from unlawful arrest under § 240.35(3) was clearly established at the time that he was arrested." Id. at *15. In the court's view, in light of Uplinger, it was objectively unreasonable for Novarro to believe that the arrest was lawful,

---

[5] Not available on WestLaw.

[6] The district court made these remarks concerning the difficulty of Novarro's position in the context of analyzing the failure-to-train claim, discussed below, rather than in the context of the false arrest claim. They are plainly pertinent to the issue of qualified immunity for the false arrest claim, however.

8

because courts "must at least hold [public] officials to a basic standard of awareness where the state's highest court has pronounced a statute facially unconstitutional."[7]  Id. at *16.

The district court also denied the motion for summary judgment on the failure-to-train claim against the city.  The court based its decision on evidence submitted by Amore to the effect that the city knew that its police officers operating in Stewart Park would encounter individuals soliciting and engaging in sex.  See id. at *18-*19.  At argument before this Court, the parties represented that the failure-to-train claim against the city was still pending.  It is therefore not before us on this appeal.[8]

On June 9, 2008, the district court denied Amore's motion to reconsider the denial of his motion for summary judgment on the false arrest claim.  See Amore v. City of Ithaca,

---

[7]  The district court also concluded that there were triable issues of fact as to whether Novarro had probable cause to arrest Amore for disorderly conduct under N.Y. Penal Law § 240.20 or second-degree harassment under N.Y. Penal Law § 240.26(3) based on Amore's sexual encounter with a stranger in the park just prior to his interaction with Novarro.  Id. at *9, *16.

[8]  We note that the attorney for Novarro and the attorney for the city are one and the same, and that at argument the parties speculated briefly about whether the outcome of this appeal would have any effect on the pending case against the city, suggesting the possibility of some conflict arising out of the dual representation.  We emphasize, however, that the case against the city is not before us on this appeal -- indeed, as explained infra, we would lack jurisdiction over such an interlocutory appeal from the denial of summary judgment absent the collateral order doctrine, which the case against the city does not implicate -- and we of course offer no opinion as to whether, or if it does how, the resolution of this appeal affects that case.

No. 04 Civ. 176, 2008 U.S. Dist. LEXIS 45328 (N.D.N.Y. June 9, 2008).

On June 17, 2008, the defendants petitioned the district court for leave to appeal from the March 28, 2008 memorandum opinion and order. The district court denied leave to appeal. On October 1, 2008, we concluded that we had jurisdiction over the March 28 memorandum opinion and order to the extent that it denied Novarro qualified immunity on the false arrest claim, and directed the Clerk of the Court to issue a briefing schedule for an appeal on the qualified immunity question.

The sole question on appeal, then, is whether Novarro is entitled to qualified immunity on the false arrest claim.

**DISCUSSION**

I. Jurisdiction and Standard of Review

"As a general rule, the denial of summary judgment is not immediately appealable." Finigan v. Marshall, 574 F.3d 57, 60 n.2 (2d Cir. 2009) (citing 28 U.S.C. § 1291). "The collateral order doctrine, however, allows review of a district court's denial of summary judgment on the ground that the movant was not entitled to qualified immunity to the extent that the district court has denied the motion as a matter of law." Id. (internal quotation marks omitted).

Our jurisdiction is limited such that we may only review Novarro's assertion of qualified immunity based on

10

"stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district court deemed available for jury resolution." Kelsey v. County of Schoharie, 567 F.3d 54, 60 (2d Cir. 2009) (internal quotation marks omitted).  While "we must examine whether a given factual dispute is 'material' for summary judgment purposes, we may not review whether a dispute of fact identified by the district court is 'genuine.'" Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006) (internal quotation marks omitted).

Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in his favor.  See, e.g., LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005).  We review the district court's denial of summary judgment on qualified immunity grounds, as in other contexts, de novo.  See, e.g., Moore v. Andreno, 505 F.3d 203, 208 (2d Cir. 2007).

II.  Qualified Immunity

Qualified immunity is an affirmative defense designed to "protect[] the [defendant public] official not just from liability but also from suit . . . thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing a trial." X-Men Sec., Inc. v. Pataki, 196 F.3d 56,

11

65 (2d Cir. 1999). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity." Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009).

"The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" Elder v. Holloway, 510 U.S. 510, 514 (1994) (quoting Harlow, 457 U.S. at 806). The qualified immunity defense is supposed to "provide[] ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In order to overcome a qualified immunity defense, a plaintiff must demonstrate that "[t]aken in the light most favorable to the [plaintiff,] . . . the facts alleged show [that] the officer's conduct violated a constitutional right," and that the right allegedly violated was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds, Pearson v. Callahan, 129 S. Ct. 808 (2009). "For a constitutional right to be 'clearly established' for purposes of determining whether an officer is entitled to qualified immunity, the 'contours of the right must be sufficiently clear that a

12

reasonable official would understand that what he is doing violates that right.'" Mollica v. Volker, 229 F.3d 366, 370 (2d Cir. 2000) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); see also Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

Thus the inquiry into whether it was objectively reasonable for an officer to believe that his conduct did not violate a constitutional right has been viewed as part of the inquiry into whether the constitutional right allegedly violated was "clearly established." See Harlow, 457 U.S. at 818 ("Reliance on the objective reasonableness of an official's conduct[] [is] measured by reference to clearly established law . . . ."); Okin, 577 F.3d at 433 n.11 ("Saucier makes it clear that the 'objectively reasonable' inquiry is part of the 'clearly established' inquiry."). We have, however, sometimes framed the "objectively reasonable" inquiry as separate from the "clearly established" inquiry. See, e.g., Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010) ("[Q]ualified immunity . . . is sufficient to shield executive employees from civil liability under § 1983 if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights." (internal quotation marks and alterations omitted)). Whether the

13

"objectively reasonable" inquiry is framed as part of the "clearly established" inquiry, or apart from it, does not affect the outcome of the qualified immunity analysis here.[9]

### III.  Novarro's Qualified Immunity

We assume here, not without reason, that when Novarro arrested Amore he violated a constitutional right of Amore not to be arrested for activity made criminal by section 240.35(3), which had been held unconstitutional by the New York Court of Appeals.  Cf. Lemon v. Kurtzman, 411 U.S. 192, 207-08 (1973) (plurality opinion) (indicating that a statute is a legal basis for arrest only "[u]ntil judges say otherwise").  And the broad right not to be arrested pursuant to an unconstitutional statute may well be considered clearly established.  But the question here is whether the right not to be arrested under this statute was clearly established, that is, whether it was objectively reasonable for Novarro to fail to realize that the statute he was attempting to enforce against Amore had been held to be unconstitutional by the New York Court of Appeals.  See Okin, 577 F.3d at 433 n.11 (framing inquiry as whether "the law was clearly established . . . for the particular context in which [the

---

[9] For several years, under Saucier, courts were required to address first whether taken in the light most favorable to the plaintiff, the facts alleged disclosed a constitutional violation at all, and only then decide whether it was clearly established and whether the defendant's acts were objectively reasonable. That is no longer required.  See Pearson, 129 S. Ct. at 813 ("We now hold that the Saucier procedure should not be regarded as an inflexible requirement and that petitioners are entitled to qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional.").

14

challenged conduct] occurred").  "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."  Pierson v. Ray, 386 U.S. 547, 555 (1967).[10]

To spare police officers the unenviable choice between failing to enforce the law and risking personal liability for enforcing what they reasonably, but mistakenly, think is the law, we generally extend qualified immunity to an officer for an arrest made pursuant to a statute that is "on the books," so long as the arrest was based on probable cause that the statute was violated.  See Conn. ex rel. Blumenthal v. Crotty, 346 F.3d 84, 105 (2d Cir. 2003) ("Officials charged with enforcing a statute on the books . . . are generally entitled to rely on the presumption that all relevant legal and constitutional issues have been considered and that the statute is valid."); see also id. at 102 ("In order to determine whether [the defendant] may prevail, we consider many factors, but rely primarily on one factor as particularly persuasive: that the challenged conduct involved enforcement of a presumptively valid statute."); Vives v. City of New York, 405 F.3d 115, 117 (2d Cir. 2005)

---

[10]  Cf. Gilbert & Sullivan, Pirates of Penzance:

When constabulary duty's to be done, to be done.
Ah, take one consideration with another, with another,
A policeman's lot is not a happy one.

Id., Act II, available at http://math.boisestate.edu/
GaS/pirates/web_op/pirates24.html (last visited April 19, 2010).

(distinguishing <u>Crotty</u> from "case which did <u>not</u> involve state officials acting under the color of a properly-enacted statute") (emphasis in original); <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[C]ourts have continued to adhere to the central principle . . . [that] where a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional."); <u>Shero v. City of Grove, Okl.</u>, 510 F.3d 1196, 1204 (10th Cir. 2007) (referring to reliance on statute as "extraordinary circumstance[]" that could "so prevent[] the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right").

We noted some years ago that:

> [I]t has long been clearly established that an arrest without probable cause is a constitutional violation.  Nonetheless, the arresting officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met.

<u>Robison v. Via</u>, 821 F.2d 913, 921 (2d Cir. 1987) (citations omitted).

Similarly here, we assume that it is clearly established that an arrest under a statute that has been

16

authoritatively held to be unconstitutional is ordinarily a constitutional violation.  And it is clear that Amore was sufficiently detained for him to have been "arrested" for purposes of bringing this false arrest claim,[11] and that the statute under which he was arrested had been held by the New York Court of Appeals to be unconstitutional.  But the question is whether it was nonetheless objectively reasonable for Novarro, as the arresting officer, to have believed that the statute in question remained fully in force and that his arrest was

_____

[11]  "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."  Davis v. Rodriquez, 364 F.3d 424, 433 (2d Cir. 2004).  "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Novarro conceded that Amore was detained, contrary to his express desire to be released, while Novarro compelled him to produce identification and waited for backup to arrive.

In a letter submitted after argument pursuant to Federal Rule of Appellate Procedure 28(j), Novarro argues that under our recent decision in Burg v. Gosselin, 591 F.3d 95 (2d Cir. 2010), which was issued after this case was briefed and argued, Amore's detention was insufficient to give rise to a claim of false arrest.  That argument is based on our conclusion in Burg that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure."  Id. at 98.  Novarro misconstrues Burg, which distinguished false arrest claims based on a plaintiff's detention while interacting with law enforcement: "Burg thus does not contend that she was detained or seized while [the officer] wrote out the summons."  Id. at 96 n.3.  Indeed, we noted in Burg that "a plaintiff pleads a seizure when he alleges that a police officer held on to his identification and ordered him to stay put while the police officer wrote out a summons."  Id. (citing Vasquez v. Pampena, No. 08 Civ. 4184, 2009 WL 1373591, at *2 (E.D.N.Y. May 18, 2009)) (internal quotation marks omitted).  There is nothing in Burg, therefore, inconsistent with our conclusion that Amore's detention was a Fourth Amendment seizure for purposes of a false arrest claim.

17

therefore not a violation of Amore's constitutional rights. Cf. id. (focusing inquiry on "the particular facts of the case"). If it was objectively reasonable for Novarro to believe that the statute in question was valid, then arrest under this particular unconstitutional statute in the circumstances presented here was not a clearly established constitutional violation for purposes of qualified immunity.[12]

Section 240.35(3) made it a crime to loiter "in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature."[13] Uplinger, 58 N.Y.2d at 937, 447 N.E.2d at 62. In that 1983 decision, the New York Court of Appeals declared the provision unconstitutional. The court explained that "[t]he object of the loitering statute is to punish conduct anticipatory to the act of consensual sodomy. Inasmuch as the conduct ultimately contemplated by the loitering statute may not be deemed criminal, we perceive no basis upon which the State may continue to punish loitering for that purpose." Id., 58 N.Y.2d at 938, 447 N.E.2d at 63; see also

_____

[12] In Robison, it should be noted, we framed the "objectively reasonable" inquiry as separate from the "clearly established" inquiry. Robison, 821 F.2d at 921. As noted in the text, supra, whether the inquiries are so framed, or whether the former inquiry is encompassed within the latter, has no bearing on the resolution of the qualified immunity issue.

[13] "'Deviate sexual intercourse'" meant "'sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva.'" People v. Onofre, 51 N.Y.2d 476, 484, 415 N.E.2d 936, 938 (1980) (quoting former New York Penal Law Section 130.00).

18

People v. Onofre, 51 N.Y.2d 476, 485, 415 N.E.2d 936, 938-39 (1980) (invalidating "consensual sodomy" statute prohibiting "deviate sexual intercourse" on constitutional privacy and Equal Protection grounds because the statute "reach[ed] noncommercial, cloistered personal sexual conduct of consenting adults and . . . permitt[ed] the same conduct between persons married to each other without sanction").

"Despite judicial invalidation, the State of New York has not formally repealed [section 240.35(3)]." Casale v. Kelly, 257 F.R.D. 396, 401 (S.D.N.Y. 2009).[14] At the time Novarro arrested Amore -- and to this day[15] -- section 240.35(3), despite Uplinger's 1983 holding that the section is unconstitutional, has continued to be published in official versions of the New York Penal Law. See N.Y. Penal Law § 240.35(3) (2010). Indeed, WestLaw and Lexis sites continue to include the text in their services.[16]

---

[14] Indeed, the provision was enforced as recently as April 6, 2010, by the New York City Parks Department, when the Parks Department issued two summonses for violations of the provision. Casale v. Kelly, Nos. 08 Civ. 2173, 05 Civ. 5442, 2010 WL 1685582, at *6, 2010 U.S. Dist. LEXIS 40606, at *28 (S.D.N.Y. Apr. 26, 2010).

[15] In 2003, as part of a sweeping amendment to various New York statutes, the legislature amended N.Y. Penal Law § 240.35(3) by changing the phrase, "deviate sexual intercourse," to "oral sexual conduct, anal sexual conduct." 2003 N.Y. LAWS 264, ch. 264 § 30, eff. Nov 1, 2003. The section otherwise remained unchanged.

[16] To be sure, McKinney's Consolidated Laws of New York Annotated contains a reference to the fact that § 240.35(3) "has been declared unconstitutional." See 39 McKinney's Penal Law § 240.35, William C. Donnino, "Practice Commentary" (citing Uplinger). WestLaw and Lexis versions of the statute contain

More than two years after Amore's arrest for violating section 240.35(3), the New York State legislature amended the wording of this very section,[17] thus treating section 240.35(3) as though it were fully in effect despite the holding of the New York Court of Appeals two decades previously that the section was unconstitutional.[18]

In determining whether an officer is entitled to qualified immunity, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct."  Young v. County of Fulton,

---

similar references.  But is undisputed on this appeal that the copy of the Penal Law provided to Novarro by the police department, published by a professional third-party publisher, contained no such annotation.  It is also undisputed that Novarro received no information or instruction regarding the constitutionality of section 240.35(3) prior to the arrest.

[17]  See footnote 15, supra.

[18]  The United States District Court for the Southern District of New York (Scheindlin, Judge) recently held the City of New York to be in contempt of court for failing to act with reasonable diligence to eliminate enforcement of section 240.35(3) and two related loitering provisions in the Penal Code that have been ruled unconstitutional, sections 240.35(7) and 240.35(1), after being ordered by that court on June 23, 2005 and May 2, 2008 to do so.  See Casale v. Kelly, 2010 WL 1685582, 2010 U.S. Dist. LEXIS 40606.  The decision was based on what the court found to be the inadequate response of the City to two court orders that were issued after the events pertinent to this appeal took place.  It did not involve the question of any individual officer's qualified immunity or the question of any conduct or policy of the City of Ithaca.  The Casale court noted: "While it is unclear why the New York Legislature has not repealed these void provisions, there can be no question that formal repeal of the Statutes would in all likelihood decrease enforcement of them."  Id., 2010 WL 1685582, at *1 n.6, 2010 U.S. Dist. LEXIS 40606, at *5 n.6.

20

160 F.3d 899, 903 (2d Cir. 1998). It is undisputed that: Novarro did not know that section 240.35(3) was unconstitutional; he had not received instruction or information on the constitutionality of the statute; and he was relying on an accurate, if unannotated, copy of the New York Penal Law when he arrested Amore. We cannot say that Novarro's arrest of Amore was objectively unreasonable under these circumstances, where he had every reason to believe that the statute of arrest was valid and in effect.[19] Amore has not pointed us to any cases that compel a contrary conclusion, nor are we ourselves aware of one.

There are, to be sure, judicial dicta suggesting that an officer's entitlement to rely on a statute expires when a binding court decision declares the statute unconstitutional. See Michigan v. DeFillippo, 443 U.S. 31, 38 (1979) (state officials "are charged to enforce laws until and unless they are declared unconstitutional"); Vives, 405 F.3d at 117 ("We have held that absent contrary direction, state officials are entitled to rely on a presumptively valid state statute until and unless the statute is declared unconstitutional.") (internal quotation marks, ellipses, and alterations omitted); Crotty, 346 F.3d at 102 ("[U]ntil judges say otherwise, state officers have the power to carry forward the directives of the state legislature") (internal quotation marks and ellipsis omitted); see also Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) ("A plaintiff can

_____

[19] In order for his conduct to be immune, Novarro also had to have an objectively reasonable belief that Amore had violated the statute. That subject is discussed in Section IV., infra.

21

demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the [federal Circuit in which the case arose], or the weight of authority from other circuits.") (internal quotation marks omitted).  But these statements were uttered in the course of _granting_ qualified immunity or, in _DeFillippo_, ruling in favor of the police officers on a motion to suppress.  None of them suggested that if a statute has been held unconstitutional, adherence to it by a law enforcement official is, _ipso facto_, unreasonable irrespective of the circumstances.  That is not the law.

We conclude that Novarro's reliance on New York Penal Law Section 240.35(3) in arresting Amore was objectively reasonable.

IV.  Whether Novarro Had Arguable Probable Cause to Arrest Amore under Section 240.35(3)

Amore argues that even if it was reasonable for Novarro to rely on section 240.35(3), his apprehension of Amore was a false arrest because it was not supported by probable cause.  And Amore contends that Novarro is not entitled to qualified immunity because he did not have even "_arguable_ probable cause" for the arrest.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  _Weyant v. Okst_, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted).  Probable cause exists if at the time of the arrest "the facts and circumstances

22

within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); accord, Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).

In determining whether an officer is entitled to qualified immunity for a false arrest claim in the absence of probable cause, we examine whether there was "arguable probable cause." Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id. (internal quotation marks omitted). In deciding whether an officer's conduct was "objectively reasonable" for purposes of qualified immunity, we look to the information possessed by the officer at the time of the arrest, but "we do not consider the subjective intent, motives, or beliefs" of the officer. Crotty, 346 F.3d at 106.

At the time of Amore's arrest, section 240.35(3) on its face prohibited "[l]oiter[ing] . . . in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature . . . ." N.Y. Penal Law § 240.35(3) (pre-2003 amendment text)); see also Uplinger, 58 N.Y. 2d at 937, 447 N.E. 2d at 62. Amore does not dispute that the sexual act he offered to perform

23

on Novarro would have been treated under the statute as "sexual behavior of a deviate nature."

Amore argues instead that the facts could as easily support a theory that Novarro solicited him, not the other way around. But in all the versions of the interaction between Amore and Novarro reflected in the record, it is Amore who initiates the conversation with Novarro and who proposes a sexual interaction.

We therefore disagree with Amore's insistence that the several versions of the event are materially "inconsistent." Appellee's Br. 14. On the undisputed facts Novarro had at least arguable probable cause to believe that Amore was "[l]oiter[ing] . . . in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature . . . ."

V. Disorderly Conduct; Harassment

Because we conclude that Novarro is entitled to qualified immunity for arresting Amore pursuant to N.Y. Penal Law § 240.35(3), we decline to reach Novarro's argument that he is entitled to qualified immunity because there was arguable probable cause to arrest Amore for disorderly conduct or harassment.

**CONCLUSION**

24

For the foregoing reasons, we reverse the district court's denial of Novarro's motion for summary judgment, and remand the cause with instructions to the district court to grant the motion, thereby dismissing the false arrest claim.