**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-4020 and 12-4021
_____

BRIAN D. KELLY,

Appellant in No. 12-4020

v.

THE BOROUGH OF CARLISLE; DAVID J. ROGERS, individually and as a police
officer for the Carlisle Borough Police Department


DAVID J. ROGERS,

Appellant in No. 12-4021


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-cv-1573)
District Judge: Hon. Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
October 28, 2013

Before: FISHER, JORDAN and ALDISERT, *Circuit Judges.*

(Filed: November 19, 2013)



_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This case is before us for the second time. The United States District Court for the Middle District of Pennsylvania originally granted Officer David Rogers qualified immunity from a lawsuit brought by Brian Kelly. We vacated and remanded, ordering the District Court to determine whether Rogers was entitled to qualified immunity for relying on an assistant district attorney's incorrect legal advice, even though that advice resulted in a violation of clearly established law. The District Court held a jury trial to make findings of fact relating to that issue, and the jury found that Rogers acted in good faith and reasonably relied on the legal advice he received. The District Court then granted in part and denied in part both parties' motions for judgment as a matter of law, granting Rogers qualified immunity as to his conduct occurring after communicating with the government attorney but denying it as to conduct occurring prior and further denying Rogers's Rule 59(e) motion to amend the portion of the judgment adverse to him. Kelly appealed, and Rogers cross-appealed. We will affirm the orders of the District Court.

I. **Background**

Rogers is a police officer in the Carlisle Police Department. Kelly was the passenger in a vehicle pulled over by Rodgers for speeding. Kelly had been using a small handheld video recorder to record his surroundings, and he surreptitiously filmed the encounter with Rogers. When Rogers realized he was being filmed, he seized the camera. Rogers then returned to his patrol car and called the district attorney's office to find out whether he could arrest Kelly for a violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa. Cons. Stat. §§ 5701-82.

2

Rogers did not mention that he himself was trying to record the stop.[1]  Assistant District Attorney ("ADA") John Birbeck reviewed the statute and told Rogers that he had probable cause to arrest Kelly.  Unfortunately for all concerned, that advice was erroneous, as recording a person's statements does not violate the Wiretap Act unless the person had a reasonable expectation of privacy, and a police officer does not have a reasonable expectation of privacy during a traffic stop when the officer is himself recording the traffic stop.  *See Kelly v. Borough of Carlisle* (*Kelly I*), Civil Action No. 1:07-cv-1573, 2009 WL 1230309, at *4 (M.D. Pa. May 4, 2009).  Based on the advice from Birbeck, Rogers arrested Kelly, and Kelly spent 27 hours in jail before the charges against him were dropped.

Kelly later brought suit against Rogers and the Borough of Carlisle under 42 U.S.C. § 1983, alleging that Rogers had violated his constitutional rights under the First and Fourth Amendments.  The District Court granted summary judgment to Rogers based on qualified immunity and granted the Borough summary judgment because Kelly had failed to present facts sufficient to establish municipal liability.  *Kelly I*, 2009 WL 1230309, at *11.  Kelly appealed, and we affirmed the grant of summary judgment to the Borough and the grant of summary judgment on the First Amendment claim (those rulings are not at issue in the current appeal), but vacated the grant of summary judgment

---

[1] Rogers did not actually succeed in recording the stop because the recording device in his patrol car malfunctioned.  That, however, is irrelevant for the purpose of determining whether he was entitled to qualified immunity, since he reasonably believed he was recording the traffic stop, and thus he did not have a reasonable expectation of privacy sufficient to demonstrate a violation of the Pennsylvania Wiretap Act.  *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 256, 258 (3d Cir. 2010).

to Rogers on the Fourth Amendment claim. *Kelly v. Borough of Carlisle* (*Kelly II*), 622 F.3d 248, 256, 258 (3d Cir. 2010). Our vacatur was based on two conclusions: (1) "that a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause" (but that presumption may be rebutted by a showing that "a reasonable officer would not have relied on the prosecutor's advice"); and (2) that, "at the time of Kelly's arrest, it was clearly established that a reasonable expectation of privacy was a prerequisite for a Wiretap Act violation" and "that police officers do not have a reasonable expectation of privacy when recording conversations with suspects." *Id.* at 255-56, 258. In other words, we concluded that, as long as Rogers acted in good faith and reasonably relied on Birbeck's mistaken advice in concluding there was probable cause to arrest Kelly, he was presumptively entitled to qualified immunity, but that he nonetheless violated clearly established law.

We then remanded the case to the District Court, asking it to determine in the first instance "how the Pennsylvania Wiretap Act fits into the landscape painted by" the precedent that "[p]olice officers generally have a duty to know the basic elements of the laws they enforce." *Kelly II*, 622 F.3d at 258-59. We also identified two questions of fact that required additional elaboration: (1) whether Kelly hid the camera and was in fact secretly recording Rogers during the stop; and (2) whether Rogers called Birbeck to seek legal advice, or just to get approval for the arrest that Rogers had decided to make. *Id.* at 256.

4

On remand, the District Court interpreted our holding as requiring "it to determine whether [Officer Rogers's] erroneous probable cause determination was unreasonable as a matter of law and therefore not entitled to qualified immunity." (App. at 5.) To do so, it had to resolve the question it believed was left open by our prior opinion – "whether a police officer's reliance on a prosecutor's advice could be reasonable where the advice is contrary to clearly established law." (*Id.* at 25.) Based on an opinion from the United States Court of Appeals for the Second Circuit, *Amore v. Novarro*, 624 F.3d 522, 535-36 (2d Cir. 2010), the District Court concluded that there is a narrow category of circumstances in which such reliance can be reasonable, and thus the officer could be entitled to qualified immunity even when his conduct violated law that was clearly established. Specifically, the Court held that "even when the law is clearly established, where an officer acts 'deliberately and rationally in seeking to determine the then-valid, applicable and enforceable law before taking the actions for which the plaintiff [] seeks to hold him accountable,' qualified immunity may still be available." (App. at 9-10 (alteration in original) (quoting *Amore*, 624 F.3d at 535).)

Under that rule, the District Court concluded that it was possible that Rogers was entitled to qualified immunity because of his good faith reliance on Birbeck's advice, but that additional factual findings were necessary to reach that conclusion. The Court thus held a jury trial for the limited purpose of making specific factual findings relevant to qualified immunity, namely, whether Rogers reasonably believed that Kelly was attempting to secretly record him, whether Rogers called Birbeck to obtain advice rather than just approval, and whether Officer Rogers deliberately or recklessly omitted the fact

5

that he was also recording the stop during his conversation with Birbeck. Each of those factual questions was designed to reveal whether Rogers relied on Birbeck's advice in good faith. The jury found that Rogers reasonably believed Kelly was attempting to videotape him without his knowledge, that Rogers did not deliberately omit the fact that he was recording the stop, and that he was sincerely seeking legal advice. Based on those findings, the District Court concluded that Rogers's conduct fit the narrow category it had defined, and that he was entitled to qualified immunity with regard to the arrest. The District Court held that Rogers was not immune for his seizure of the camera, however, as that action occurred before Rogers obtained advice from Birbeck. Accordingly, the District Court granted Kelly's motion for judgment as a matter of law "as to [Kelly]'s Fourth Amendment claim against [Rogers] for the seizure of [Kelly]'s video camera," and granted Rogers's motion as to the claim regarding his arrest. (App. at 34.)

Rogers then filed a Rule 59(e) motion to alter or amend judgment, arguing that judgment should be entered in his favor as to Kelly's claim arising from the seizure of the camera because that seizure did not constitute a Fourth Amendment violation, and because, even if it did constitute a violation, he was entitled to qualified immunity. The Court denied the motion because Rogers had previously stipulated (by agreeing to a jury instruction) that the seizure constituted a constitutional violation and was performed in violation of clearly established law. Now before us are Kelly's appeal and Rogers's cross-appeal.

6

**II.  Discussion**[2]

Kelly argues that the District Court erred in extending qualified immunity to Rogers with regard to conduct occurring after the call to Birbeck, namely the arrest. According to Kelly, it was not objectively reasonable for Rogers to rely on Birbeck's advice because that advice was contrary to clearly established law, and police officers are presumed to know the elements of the clearly established law that they are enforcing. Rogers too finds fault with the District Court, saying that, for three reasons, it erred in denying him qualified immunity with regard to the camera seizure:  (1) Kelly waived any specific challenge to that seizure, as the Fourth Amendment issue was not posed to address that seizure until the opinion following the jury trial, and even then the Court acted *sua sponte*; (2) temporary seizure of evidence of a suspected crime is reasonable; and (3) the seizure was a *de minimus* constitutional violation.  We take up each of the parties' arguments in turn.

   A.  *The Arrest of Kelly*

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  "We exercise plenary review over the District Court's denial of judgment as a matter of law." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009).  When reviewing a district court decision denying a motion for judgment as a matter of law, we exercise the same standard of review as the District Court. *Manus Corp. v. NRG Energy, Inc.* (*In re O'Brien Envtl. Energy, Inc.*), 188 F.3d 116, 122 (3d Cir. 1999).  Therefore, we must grant such a motion "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012) (quoting *LePage's Inc. v. 3M*, 324 F.3d 141, 145-46 (3d Cir. 2003) (en banc)) (internal quotation marks omitted).  The standard of review concerning a denial of a motion under Rule 59 is for an abuse of discretion. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). While qualified immunity can protect police officers for actions taken in the course of their duties, that protection is forfeited when an officer's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)) (internal quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, No. 12-1217, 2013 WL 5878007, – U.S. –, slip op. at *2 (Nov. 4, 2013) (per curiam) (citation omitted) (internal quotation marks omitted). Courts follow a two-step analysis to determine whether a government official is entitled to qualified immunity, looking first to whether "a constitutional right would have been violated on the facts alleged" and, if so, whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). However, courts may look to whether the law prohibiting a defendant's conduct was clearly established without first determining whether there was a constitutional violation under the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As we did in *Kelly II* and as the District Court did below, we will focus on *Saucier*'s second step – whether the constitutional right was clearly established at the time of the encounter between Kelly and Rogers.

We have already determined that, "at the time of Kelly's arrest, it was clearly established that a reasonable expectation of privacy was a prerequisite for a Wiretap Act violation," and that "police officers do not have a reasonable expectation of privacy when recording conversations with suspects." *Kelly II*, 622 F.3d at 258. But we also noted that, although "[P]olice officers generally have a duty to know the basic elements of the laws they enforce," *id.*, in circumstances when a police officer "neither knew nor should have known of the relevant legal standard," qualified immunity may still be granted. *Harlow*, 457 U.S. at 818-19. In other words, there are circumstances wherein a police officer's violation of a law may be within the bounds of reason, even though the law in question can be said, from the comfort of an armchair, to be "clearly established." *See, e.g.*, *Amore*, 624 F.3d at 535 (2d Cir. 2010) ("'The statement in *Harlow* that reasonably competent public officials know clearly established law[] is a legal fiction.' Qualified immunity is appropriate in 'those situations in which the legal fiction does not make sense and applying that fiction would create problems that qualified immunity is intended to avert.'" (citation omitted) (quoting *Lawrence v. Reed*, 406 F.3d 1224, 1237 (10th Cir. 2005) (Hartz, J., dissenting))).

For example, in *Amore*, which the District Court relied on in concluding that Rogers was entitled to qualified immunity, the plaintiff offered to perform a sexual act on an undercover police officer in a public park. *Id.* at 526. The defendant police officer then consulted another officer's copy of the New York Penal Law, which listed loitering for the purpose of soliciting certain sexual conduct as a violation of state law, and, relying on that information, arrested the plaintiff. *Id.* However, that copy of the penal

9

code should not have included the loitering statute because the New York Court of Appeals had ruled the statute in question unconstitutional 20 years earlier. *Id.* at 532-33 (citing *People v. Uplinger*, 447 N.E.2d 62 (N.Y. 1983)). The plaintiff sued the police officer under 42 U.S.C. § 1983, alleging false arrest, and the police officer moved to dismiss the complaint based on qualified immunity.[3] *Id.* at 527. Although the district court denied the motion, the Second Circuit reversed, concluding that, even when a defendant violates a clearly established law, he may still be entitled to qualified immunity if he acts "deliberately and rationally in seeking to determine the then-valid, applicable and enforceable law." *Id.* at 535. By undergoing such efforts the police officer may demonstrate that the violation was not "objectively unreasonable." *Id.*

In *Kelly II*, we adopted reasoning similar to that of the *Amore* court, saying "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." 622 F.3d at 255-56. We noted that such "reliance must itself be objectively reasonable, however, because 'a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one.'" *Id.* at 256 (quoting *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004)). We further held that a plaintiff may rebut the presumptive entitlement to immunity if he demonstrates that, "under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's

---

[3] The district court in that case converted the police officer's motion to dismiss into a motion for summary judgment. *Amore*, 624 F.3d at 527.

advice." *Id.* Finally, we asked the District Court to answer two questions: whether the District Court "evaluate[d] sufficiently the state of Pennsylvania law at the relevant time" and whether the record indicates that – although the prerequisites of the Wiretap Act are clearly established – Rogers reasonably and in good faith relied on the ADA's advice in arresting Kelly. *Id.* at 258-59. The District Court answered both in the affirmative, and, for at least two reasons, we agree.

First, although the prerequisites of the Wiretap Act were clearly established at the time of the incident, this is not a case where Rogers "knew or should have known" that Kelly's actions were not criminal in nature. *Peterson v. City of Plymouth*, 945 F.2d 1416, 1421 (8th Cir. 1991). The District Court noted that Rogers had a "limited familiarity with the Wiretap Act, gained from his training." (App. at 28.) Specifically, his understanding of the law was that because "he was obliged to inform motorists if he recorded a stop, … he believed the duty was reciprocal under the Act." (*Id.* (citing *Commonwealth v. McIvor*, 670 A.2d 697, 703-04 (Pa. Super. Ct. 1996) (distinguishing between the expectation of privacy and the expectation of non-interception of oral communications, holding that motorists are still entitled to the latter during traffic stops, and suggesting that police officers are similarly entitled)).)

Granted, we have previously acknowledged that "two Pennsylvania Supreme Court cases – one almost 20 years old at the time of Kelly's arrest – had held that covertly recording police officers was not a violation of the Act," and that those cases supported the conclusion that a reasonable expectation of privacy was a clearly established prerequisite for a Wiretap Act violation. *Kelly II*, 622 F.3d at 258. But

11

Rogers's incorrect understanding of the law is not devoid of merit. As the District Court noted, federal courts have recently "cited with approval the Pennsylvania Superior Court's decision in *Commonwealth v. McIvor* for the proposition that while there is no expectation of privacy at a traffic stop, a police officer … does have an expectation of non-interception in his communications at the stop," and thus recording his communications would nonetheless be violative of the Wiretap Act. (App. at 29-30 n.7 (citing *Matheny v. Cnty. of Allegheny*, No. 09-cv-1070, 2010 WL 1007859, at *9 (W.D. Pa. Mar. 16, 2010)).) Such recent case law suggests that Rogers was not "plainly incompetent" in wondering about the state of the law. *See Stanton*, slip op. at 3. In other words, even though the law was, in a sense, "clearly established," it was not so clearly established that one could say a reasonable officer "would have known" of the illegality of the arrest. *See Harlow*, 457 U.S. at 818 (holding that qualified immunity protects government officials "insofar as their [discretionary] conduct does not violate clearly established statutory or constitutional rights *of which a reasonable person would have known*" (emphasis added)).

And second, instead of proceeding solely on his own understanding of the Wiretap Act, Rogers contacted Birbeck for legal advice on whether he had probable cause to arrest Kelly. Rogers's reliance on Birbeck's comments was justified. Birbeck was "an experienced prosecutor who had been serving as the chief deputy district attorney in charge of the trial division for more than a decade." (App. at 29.) In fact, Birbeck conducted his own legal research on the Wiretap Act and whether Rogers had probable cause to arrest Kelly, and his quick research led him to conclude, albeit incorrectly, that

12

Kelly had violated the Act. The District Court eliminated any concern that Rogers's call to Birbeck was merely an attempt to rubber-stamp an arrest. The Court submitted the matter to a jury, which found that (1) Rogers reasonably believed that Kelly was attempting to secretly record him, and Rogers was not looking for a pretextual reason to arrest him; (2) Rogers called Birbeck to seek legal advice on whether probable cause existed to arrest Kelly for a violation of the Wiretap Act, and Rogers was not merely seeking to obtain approval for the arrest; (3) although Rogers neglected to mention that he was recording the traffic stop, he did not deliberately or recklessly omit that fact or any other relevant fact; and (4) Birbeck told Rogers that probable cause existed to arrest Kelly. Although Birbeck's advice was flawed, it was plausible in the absence of a thorough review of the relevant case law and was provided in real-time as Rogers was involved in a traffic stop.

Kelly argues for an absolute rule prohibiting qualified immunity when the relevant law is clearly established. If that were the law, we would have said so the first time this case was before us. We remanded the matter to the District Court because the law is more nuanced. Kelly's argument fails because it does not make appropriate allowances for government officials who "act[] precisely as one would hope [they] would act" when faced with law that is nominally "clearly established" and yet is shrouded in some obscurity or ambiguity. (App. at 30.) One purpose of qualified immunity is to protect police officers who do their best to understand the law and yet are uncertain of how it may apply in a specific situation. An officer engaged in a traffic stop may not have access to a computer, the internet, Westlaw, or enough time to research the law. It is in

13

everyone's interest to encourage law-enforcement officials to seek out legal advice in those situations. *See Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949); *see also Kelly II*, 622 F.3d at 255 ("In our view, encouraging police to seek legal advice serves such a salutary purpose as to constitute a 'thumb on the scale' in favor of qualified immunity."). In essence, qualified immunity may be granted when there is a breakdown in the legal fiction that reasonably competent police officers know every clearly established law. *See Amore*, 624 F.3d at 535. Because Rogers's reliance on Birbeck's advice was in good faith and objectively reasonable, he is entitled to qualified immunity as to Kelly's arrest.

B.    *The Seizure of Kelly's Camera*

Regarding the seizure of Kelly's camera, we cannot accept Rogers's arguments because of the stipulation he entered into, acknowledging that the "'seizure … was in error, without probable cause[,] and in violation of Mr. Kelly's constitutional rights.'" (App. at 38 (second alteration in original).)[4] He also stipulated to the amount of damages. Having thus effectively conceded that he is not entitled to qualified immunity, he cannot now be heard to argue to the contrary. Therefore, Rogers is not entitled to qualified immunity as to his seizure of Kelly's camera.[5]

---

[4] Although not in the Appendix, the stipulation was memorialized in the parties' joint proposed jury instructions provided to the District Court before trial.

[5] The District Court's denial of Rogers's Rule 59(e) motion was justified for another reason. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Lazaridis*, 591 F.3d at 669 (citation omitted) (internal quotation marks omitted). Rogers's motion included legal arguments that he had at his disposal throughout the proceedings but failed to include in his motion for judgment as a matter of law. The District Court correctly determined that it could not consider those arguments for the first time in a motion for reconsideration.

14

**III.    Conclusion**

For the foregoing reasons, we will affirm the orders of the District Court granting qualified immunity to Rogers as to Kelly's arrest but denying it as to the seizure of Kelly's camera.