Jullian WADDLINGTON, Plaintiff,

v.

The CITY OF NEW YORK, et. al., Defendants.

No. 10–cv–5010(SLT)(RLM).

United States District Court, E.D. New York.

April 23, 2013.

Wale Mosaku, Law offices of Wale Mosaku, P.C., Brooklyn, NY, for Plaintiff.

Felicia A. Yancey, NYC Law Department, Gregory P. Mouton, Law Office of Gregory P. Mouton, Jr., New York, NY, for Defendants.

## MEMORANDUM AND ORDER

TOWNES, District Judge:

Jullian Waddlington ("Plaintiff") alleges that his rights were violated when he was unlawfully arrested, detained, and strip-searched along with four other individuals on January 22, 2009 by several members of the New York Police Department ("NYPD"). Asserting violations of both federal and state law, Plaintiff filed this action against Sergeant William Hall and Officers Charles S. McDonald, Richard Arroyo, Mark Whirl, Christopher Esposito, and Abraham Arteaga (collectively, the "Officers"), as well as the City of New York (together with the Officers, "Defen-dants"). Presently, Defendants seek summary judgment on all of Plaintiff's claims, which Plaintiff has opposed. For the reasons that follow, Defendants' motion is granted in its entirety.

### I. STANDARDS OF REVIEW

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir.1999) (internal quotation marks omitted). The moving party bears the burden of showing that no genuine issue of fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (internal quotation marks and citations omitted). Moreover, the disputed facts must be material to the issue in the case, in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

When evaluating a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir.1998). "No genuine issue exists if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all infer-

ences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) (internal quotation marks omitted) (alteration in original).

## II. BACKGROUND

The parties do not dispute the following facts for purposes of the current motion, which are construed in a light most favorable to Plaintiff, the non-moving party. On January 22, 2009, several police officers, including those named as defendants in this action, arrived at a Brooklyn apartment ("Subject Apartment") at least in part due to three outstanding warrants for two individuals. (Defendants' Statement of Facts ("Defs. SOF") ¶¶ 2–5.) The warrants were issued for "Tyree Johnson" and "Terry Everson" and indicated that the targets of the warrants lived in the Subject Apartment. (*Id.* ¶¶ 4–5; Plaintiff's Statement of Facts ("Pl. SOF") ¶¶ 4–5.) Upon arriving at the apartment, the Officers knocked on the front door. Although it is somewhat unclear who greeted the Officers upon their arrival at the apartment, there is no dispute that Plaintiff and his mother, Cynthia Everson, were inside, as were Kareem Everson ("Kareem"), Michael Everson ("Michael"), Tameek Shelly, and James Thompson. (Defs. SOF ¶ 8.) It is also undisputed that the Officers spoke to Plaintiff's mother at the door of the apartment. (*Id.* ¶ 7; Pl. SOF ¶ 7.) The Officers asked Plaintiff's mother if she knew either individual mentioned in the warrants and showed her photographs of two individuals, but she did not recognize either of them. (Cynthia Everson Deposi-

tion ("Pl. Mother's Dep.") at 13–14.) She did, however, indicate to the Officers that she had a nephew named "Tyree Everson" and offered to show the Officers a photograph of him. (Defs. SOF ¶ 11; Pl. Mother's Dep. at 14.) While speaking to Plaintiff's mother in the doorway, the Officers heard laughter coming from one of the two bedrooms in the apartment. (Defs. SOF ¶ 12.) The Officers then asked if they could enter the apartment to see whether any of the male individuals in the bedroom (the "Subject Bedroom") were Tyree Everson and entered the apartment. (*Id.* ¶ 13; Plaintiff's Deposition ("Pl. Dep.") at 41–42.)

The apartment contained a living room, a kitchen, and a hallway that included two bedrooms, both on the left side of a hall. (Defs. SOF ¶ 15; Deposition of William Hall at 43; Pl. Mother's Dep. at 7.) The bathroom was located at the end of the hallway. (Pl. Mother's Dep. at 11.) On January 22, the date of the incident, the bedroom nearest the bathroom was occupied by Plaintiff's mother and the Subject Bedroom—the one closer to the front door—was occupied by someone else. (*Id.* ¶¶ 16–17.) There is no dispute that Plaintiff resided in the apartment until December 2008, at which time he and his mother were forced to leave because of a fire in the apartment. (Pl. Mother's Dep. at 5–6.) In January of 2009, Plaintiff's mother returned to the apartment. (*Id.* at 6.) It appears, however, that Plaintiff did not return to the apartment with his mother at that time, and instead moved in his with girlfriend. (*Id.*; Plaintiff's 50–H Testimony at 6–7.)

Upon entering the apartment, the Officers entered the living room. (Deposition of Richard Arroyo ("Arroyo Dep.") at 25.) McDonald and Arroyo then proceeded toward the Subject Bedroom, which is where they had heard the laughter, and entered

the room. (Deposition of Charles McDonald ("McDonald Dep.") at 35–36; Defs. SOF ¶ 19.) There is currently no dispute that Plaintiff was in the apartment, but not in the Subject Bedroom when McDonald and Arroyo entered it. (*See* Pl. Dep. at 30–31 (testimony that Plaintiff had recently finished washing his hands and was exiting the bathroom when the Officers entered the apartment); Defendant's Reply Br. at 4–5 (conceding for purposes of their motion for summary judgment that Plaintiff was not in the Subject Bedroom).)

Once inside the Subject Bedroom, McDonald and Arroyo retrieved a firearm, several glassine bags or envelopes of heroin, a scale and coffee grinder, and marijuana. (*Id.* ¶¶ 21–22.) At this point, McDonald and Arroyo directed the male individuals in the bedroom to go to the living room. (*Id.* ¶ 23.) In the living room, the Officers asked Plaintiff's mother whose bedroom they had come from, and she replied that the Subject Bedroom belonged to Plaintiff. (*Id.* ¶ 24.) She also told the Officers that although Plaintiff no longer lived in the apartment, if they asked, management would tell them that she and Plaintiff lived there together. (Pl.'s Mother Dep. at 19.)

Given the illegal items discovered in the Subject Bedroom, the Officers arrested Plaintiff, Kareem, Michael, Shelly, and Thompson. (*Id.* ¶ 27.) Pursuant to the New York Penal Law, Plaintiff was charged with Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, Criminally Using Drug Paraphernalia in the Second Degree, and Criminal Possession of Marijuana in the Fifth Degree. (*Id.* ¶ 28); N.Y. Penal L. §§ 220.16(1), 265.03(3), 265.02(5), 220.50(3), and 221.10(1) (respectively). Plaintiff was transported to the 75th Precinct where he was processed or otherwise photographed and fingerprinted. (Defs. SOF ¶¶ 29–30.) While at the 75th Precinct, Plaintiff alleges that he was subjected to a strip search. (*Id.* ¶ 33.)

On January 24, 2009, Plaintiff was arraigned before a Kings County criminal court judge and charged under the New York Penal Law with Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Controlled Substance in the Seventh Degree, Criminally Using Drug Paraphernalia in the Second Degree, Criminal Possession of Marijuana in the Fourth Degree, Criminal Possession of a Weapon in the Fourth Degree, Criminal Possession of Marijuana in the Fifth Degree, and Unlawful Possession of Marijuana. (Defs. SOF ¶ 34); N.Y. Penal L. §§ 220.16(1), 265.03(3), 220.03, 220.50(3), 221.15, 265.01(1), 221.10(2), 221.05 (respectively).

The Kings County District Attorney's Office ("D.A.'s Office") presented its case to the Grand Jury. (Defs. SOF ¶ 36.) Plaintiff, McDonald, and Arroyo all testified. (*Id.* ¶¶ 37–39.) The Grand Jury indicted Plaintiff on the following charges: Criminal Possession of a Controlled Substance in the Seventh Degree, Criminally Using Drug Paraphernalia in the Second Degree, and Unlawful Possession of Marijuana. (*Id.* ¶ 41); N.Y. Penal L. §§ 220.03, 220.50(2, 3), 221.05. Nonetheless, on March 9, 2010, the charges against Plaintiff were dismissed when Kareem pled guilty to Attempted Criminal Possession of a Controlled Substance in the Third Degree. (Defs. SOF ¶ 43.) On November 11, 2010, Plaintiff filed his complaint in this action, which he subsequently amended on March 3, 2011 and June 27, 2011.

## III. DISCUSSION

Plaintiff asserts the following claims against the Officers: (1) false arrest and false imprisonment pursuant to both section 1983 and state law, (2) malicious prosecution pursuant to section 1983 [1], (3) unlawful strip searches pursuant to section 1983 and state law, (4) failure to intervene/intercede pursuant to section 1983, and (5) denial of his constitutional right to a fair trial pursuant to section 1983. In addition, Plaintiff asserts against the City of New York a claim of municipal liability pursuant to section 1983.

As an initial matter, Plaintiff's second amended complaint does not contain any specific allegations against Whirl, Esposito, and Arteaga and Plaintiff's opposition to Defendants' motion for summary judgment makes no mention of them, much less explain why they are liable for any of the alleged misconduct. Similarly, although Plaintiff, in his opposition, mentions Hall by name in connection with several of his claims, he alleges no specific wrongdoing on Hall's part. Accordingly, the court grants summary judgment as to each of these defendants and analyzes Plaintiff's claims against the Officers only with regard to the remaining defendants: McDonald and Arroyo. The court will also consider Plaintiff's section 1983 claim for municipal liability against the City of New York.

### Plaintiff's Federal Claims

#### A. False Arrest and False Imprisonment

■ Plaintiff asserts section 1983 claims of false arrest and false imprisonment, which are synonymous under federal law. *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.

1991); *Hall*, 489 F.Supp.2d at 173. New York law provides the relevant elements of a false imprisonment claim. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996) (false arrest). Plaintiff must demonstrate that: (1) the defendant intended to confine him, (2) that he was conscious of the confinement, (3) that he did not consent to the confinement, and (4) that the confinement was not otherwise privileged. *Jocks · v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003). The existence of probable cause to arrest constitutes a "complete defense" to an action for false arrest. *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir.2010).

Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Curley v. Village of Suffern*, 268 F.3d 65, 69–70 (2d Cir.2001). "[P]robable cause need not be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer, and the 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.' The focus is simply on 'the validity of the arrest, and not on the validity of each charge.'" *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246(SAS), 2013 WL 322613, at *6 (S.D.N.Y. Jan. 28, 2013) (quotation marks and citation omitted). Under New York law, "[t]he presence of a narcotic drug, narcotic preparation, marihuana or phencyclidine in open view in a room, other

---

1. The court notes that in his opposition to Defendants' motion for summary judgment, Plaintiff implies that he has filed a state law claim for malicious prosecution. (Pl. Opp. at 25.) However, Plaintiff's complaint does not

appear to contain any such cause of action. In any event, as described below, the court declines to consider any of Plaintiff's state law claims.

than a public place, under circumstances evincing an intent to unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found." N.Y. Penal L. § 220.25(2).

Although the Officers did not have a warrant to search or seize the illegal items, they assert that the seizure of these items was proper because McDonald and Arroyo found the items in "plain view" in the Subject Bedroom and because Plaintiff, who was present in the apartment, was in "close proximity" to these items. *See Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (noting that although warrantless searches and seizures are generally not permitted under the Fourth Amendment, one of the "specifically delineated exceptions is the 'plain view' exception which allows police officers to seize an object without a warrant if they are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object."). Plaintiff does not dispute here that if the illegal items were in plain view, then seizure of those items was proper and his presence in the apartment would provide probable cause for his arrest. Rather, he argues that there is a genuine dispute as to whether the items were in fact in plain view. In this regard, Plaintiff points to the statement that Kareem provided to the police stating that the illegal items discovered in the Subject Bedroom were "found in [his] safe," and that he "informed the officers that it was mine at the scene. I found the safe but all item[s] were mine!" (Pl. Exs. 8, 9.) Plaintiff asserts that because this statement directly contradicts the testimony by the

Officers that the items were located in "plain view," there is a genuine dispute of material fact over whether the items were lawfully seized sufficient to Defendants' motion for summary judgment. (Pl. Opp. at 15–16.)

As an initial matter, the court notes that the only evidence Plaintiff submits that the illegal items were not in plain view is Kareem's unsworn statement to the police. However, unsworn statements are generally not considered as evidence in opposition to summary judgment. *See Brittany Dying and Printing Corp. v. Griseto*, No. 96 CIV 9218(WK), 2000 WL 1717554, at *3 (S.D.N.Y. Nov. 16, 2000) (citing *Burns v. New York State Dep't of Corr.*, No. 83 CIV 5570(MBM), 1989 WL 90803, at *3 (S.D.N.Y. Aug. 21, 1989)). Rule 56 of the Federal Rules of Civil Procedure permits courts to consider assertions in an unsworn declaration or statement at the summary judgment stage, but only if the declarant affirms, under the penalty of perjury, that the contents of the unsworn statement are true. *See* Fed. R.Civ.P. 56(c) & advisory committee's note (citing 28 U.S.C. § 1746). Because Kareem's unsworn statement does not attest to the truthfulness of the assertions contained therein, subject to the penalty of perjury, it is not a competent form of evidence on which the court may rely in its disposition of the pending motion for summary judgment. As a result, Plaintiff has not submitted any admissible evidence to demonstrate that the illegal items seized from the Subject Bedroom were not in plain view.

Even were the court to consider Kareem's statement to the police, however, his statement in no way undermines the evidence in the record that the illegal

items were discovered in plain view.[2] Kareem's statement indicates only that the illegal items were located inside a safe in the Subject Bedroom; it does not, however, indicate whether the safe was open or closed. Indeed, there is absolutely no evidence to suggest that the safe was closed or that any items inside were not in plain view when McDonald and Arroyo entered the room. Quite to the contrary, the only evidence regarding the safe supports the opposite conclusion. Plaintiff's mother testified that the Subject Bedroom contained "an old broken safe" that had been "pried open, because by the fire men and their chopping everything they must have hit something." (Pl. Mother's Dep. at 25, 26.) As a result, Plaintiff's mother testified that the safe "wouldn't shut good" because "the wires inside were cut." (*Id.* at 26.) Moreover, McDonald—who offered the only testimony in the record regarding whether the safe in the Subject Bedroom was open or closed when he and Arroyo entered the room—testified at his deposition that he looked inside the safe because its door was open. (McDonald Dep. at 62–63.) In light of this testimony, and the absence of any evidence whatsoever that the safe was closed or that the items inside were somehow obscured from view, the court cannot draw the inference that Plaintiff asks—that the illegal items were located in the safe or, even if they were, that they were not in plain view.

■ Persevering, Plaintiff argues that there is a factual dispute regarding his location at the time the Officers entered the apartment as well as the location of the other male individuals. However, such facts are immaterial to the determination

of whether the Officers had probable cause to arrest Plaintiff. First, Defendants have conceded for purposes of their motion that Plaintiff was, as he claims, not in the Subject Bedroom when McDonald and Arroyo entered the room. (*See* Defendants' Reply Memorandum at 4–5.) Plaintiff does not dispute that he was present in the apartment or that he was in "close proximity" to the controlled substances found. Second, given that Plaintiff was in close proximity to the controlled substances found, the location of individuals other than Plaintiff in the apartment is entirely irrelevant as to whether the Officers had probable cause to arrest him. *See* N.Y. Penal L. § 220.25(2) (stating that a violation occurs as to "*every person* in close proximity to such controlled substance at the time such controlled substance was found") (emphasis added). Accordingly, McDonald and Arroyo reasonably believed Plaintiff had violated New York law and had probable cause to arrest him. *See id.*

Finally, Plaintiff asserts that inconsistencies in Arroyo's and McDonald's testimonies presents a credibility issue that precludes summary judgment. More to the point, Plaintiff alleges that Arroyo's deposition testimony that Kareem never admitted to him that the illegal items were his was contradicted by Arroyo's earlier testimony to the grand jury that Kareem had in fact stated that the items belonged to him, and that McDonald's deposition testimony that he was not present when Kareem signed his confession statement was contradicted by a non-party's deposition testimony that McDonald was present. (Pl. Opp. at 16.) Such inconsistencies, however, do not automatically preclude summary judgment. Rather, the court

---

**2.** Plaintiff also argues that he testified at his own deposition that he observed no illegal items in plain view in the Subject Bedroom. (Pl. Opp. at 15.) However, as Plaintiff asserts, he was not in the Subject Bedroom when McDonald and Arroyo entered. (*Id.* at 3; Pl. Dep. at 30–31, 36–37.) Thus, his testimony is not relevant as to whether the items were in plain view at that time.

must determine whether, "after drawing all inferences and resolving all ambiguities in favor of [Plaintiff], it appears that the evidence supporting [his] case is so scant that a rational jury could not find in [his] favor." *Chertkova*, 92 F.3d at 86. Even assuming that Kareem informed Arroyo that the illegal items belonged to him and that McDonald was present when Kareem signed his confession, such facts in no way impact whether Plaintiff was "in close proximity to [the] controlled substance at the time [the] controlled substance was found." N.Y. Penal L. § 220.25(2). Accordingly, they in no way undermine McDonald and Arroyo's belief that Plaintiff had committed an offense under New York law and Defendants are entitled to summary judgment as to Plaintiff's claims of false arrest and false imprisonment.

### B. *Malicious Prosecution*

■ A malicious prosecution action implicates the Fourth Amendment constitutional right "to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir.1995). In order to prevail on a section 1983 claim against a state actor for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted). To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against him or her, (2) termination of the proceeding in his or her favor, (3) lack of probable cause for commencing the proceeding, and (4) actual malice as a motivation for defendants' actions. *Id.* at 161. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003). "Once a suspect has been indicted ... the law holds that the [g]rand [j]ury action creates a presumption of probable cause." *Irish v. The City of New York*, No. 09 Civ. 5568(RMB), 2010 WL 5065896, at *4 (S.D.N.Y. Dec. 6, 2010) (quoting *Rothstein v. Carriere*, 373 F.3d 275, 282–83 (2d Cir. 2004)). In order to rebut the presumption, a plaintiff must show "that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Hall v. Brown*, 489 F.Supp.2d 166, 171 (N.D.N.Y. 2007) (citing *Colon v. New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248, 1250 (1983)).

■ The presumption of probable cause arises here because Plaintiff was indicted by the Kings County Grand Jury. Therefore, the burden falls on Plaintiff to rebut that presumption. Attempting to meet this burden, Plaintiff asserts that in light of certain inconsistencies between McDonald's deposition testimony and his own grand jury testimony, Arroyo's deposition testimony and his own grand jury testimony, and McDonald's and Arroyo's respective grand jury testimonies, "[i]t is clear from the record, that there exists an issue of fact as to whether [the Officers] Hall, McDonald, and Arroyo directly conveyed false and/or misleading information and documentation to the D.A.'s Office" and whether these officers "contrived evidence against the plaintiff." (Pl. Opp. at 19.) Plaintiff also appears to assert—without any credible corroborative evidence that the inconsistencies in McDonald and Arroyo's testimonies arose out of these officers' efforts to further their own personal goals. (*Id.* at 18.)

To be sure, Plaintiff does not mention any specific instances of wrongdoing in the section of his memorandum that addresses his malicious prosecution claim. Nonetheless, in Plaintiff's summary of material facts, he summarizes McDonald and Arroyo's testimonies and alleges that the following inconsistencies are present in their testimonies: (1) McDonald testified at his deposition that the Officers arrived at the apartment where Plaintiff was arrested solely because of arrest warrants but testified to the grand jury that the Officers arrived in part because of an anonymous tip, (2) McDonald and Arroyo both testified to the grand jury that Plaintiff's mother and Kareem answered the door to the apartment but both testified at their depositions that Plaintiff's mother answered the door alone, (3) McDonald testified to the grand jury that the Officers found five male individuals in the Subject Bedroom, whereas Arroyo testified that they only found four, and (4) Arroyo testified to the grand jury that Kareem stated that illegal items all belonged to him but later testified at his deposition that Kareem never made any such statement. (Pl. Opp. at 7–10.)

However, aside from his own bald assertions, Plaintiff provides no evidence that McDonald and Arroyo offered inconsistent testimony in bad faith and the mere existence of inconsistent testimony is generally, without more, insufficient to overcome the presumption of probable cause created by a grand jury's indictment. *See Irish,* 2010 WL 5065896, at *4 (citing *Hall,* 489 F.Supp.2d at 173) ("Plaintiff cannot bootstrap mere inconsistencies in testimony to such a high standard of bad faith by baldly asserting the presence of [perjury] that has no basis in the record."); *see also Hall,* 489 F.Supp.2d at 173 (noting that a "bald assertion of a fraudulent scheme that finds no support in the record is, without more, insufficient to raise a triable issue of

fact as to whether Defendants harbored any bad-faith motive to prosecute [Plaintiff].").  Indeed, as Defendants point out, in at least one instance, Arroyo's testimony before the grand jury resulting in the indictment was more favorable to Plaintiff than the testimony he later provided in his deposition, further undermining any argument of bad faith as a result of these inconsistencies. (*Compare* Arroyo Grand Jury Testimony at 8) (testifying that Kareem admitted that the illegal items all belonged to him) *with* (Arroyo Dep. at 43, 46, 47) (testifying that Kareem did not make any admission that the illegal items belonged to him.)  Under these circumstances, Plaintiff has failed to rebut the presumption of probable cause that arose from the grand jury's issuance of the indictment. *See Rhodes v. United States,* No. 07–CV–470S, 2012 WL 777336, at *15 (W.D.N.Y. Mar. 7, 2012) (finding that plaintiff failed to rebut presumption of probable cause that arose from grand jury indictment because allegations failed to show that police officer's testimony was provided in bad faith and/or perjured, "rather than as a result of confusion or lapse of memory regarding a fast-moving series of events").

Moreover, the court notes that Plaintiff has not offered any evidence from which a jury could find that Defendants acted with malice. *See Williams v. City of New York,* No. 02 Civ. 3693(CBM), 2003 WL 22434151, at *8 (S.D.N.Y. Oct. 23, 2003) (granting summary judgment on malicious prosecution claim in part because plaintiff "ha[d] not offered any evidence suggesting that if [the police detective] failed to disclose information to the prosecuting attorney or the Grand Jury, h[is] motives were malicious"); *see also Boyd v. City of New York,* 336 F.3d 72, 77 (2d Cir.2003) (finding that to rebut presumption of probable cause plaintiff must present evidence that

"move[s] beyond a simple conflict of stories or mistaken memories."). To be sure, Plaintiff asserts that there is "ample proof" that the Officers "initiated the complaint against [Plaintiff], by forwarding information, in bad faith, that they knew to be false to [the D.A.'s Office]." (Pl. Opp. at 21.) However, if such evidence exists, Plaintiff does not identify it and the court is not aware of its existence. Accordingly, Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claim is granted. The court, therefore, does not address Defendants' arguments concerning absolute immunity.

C. *Unlawful Strip Searches*

■■■ Plaintiff's second amended complaint seeks damages based on his subjection to unlawful strip searches following his arrest. "The Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest' before [he] may be lawfully subjected to a strip search." *Hartline v. Gallo,* 546 F.3d 95, 100 (2d Cir.2008) (quoting *Weber v. Dell,* 804 F.2d 796, 802 (2d Cir.1986)); *see also Harriston v. Mead,* No. 05 CV 2058(RJD)(LB), 2008 WL 4507608, at *3 (E.D.N.Y. Sept. 30, 2008) ("Although the Second Circuit has not specifically addressed whether the same standard of individualized reasonable suspicion applies to felony arrestees, district courts in this circuit have held that it does.") (collecting cases). It is also "well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Gonzalez v. City of New York,* No. 03–CV–1260 SJF/CLP, 2006 WL 1995127, at *4 (E.D.N.Y. July 14, 2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

The court finds that Defendants are entitled to summary judgment as to this cause of action as well.

■■■ Other than the bare allegations in Plaintiff's second amended complaint and his conclusion that "there is an issue of fact as to whether the defendants ... McDonald and Arroyo were directly responsible and/or present for the searches and/or strip searches that the plaintiff was subjected to," (Second Amended Complaint ¶¶ 56–60; Pl. Opp. at 22), there is no evidence that McDonald or Arroyo conducted a strip search or were in any way responsible for a strip search if one occurred at the precinct. Indeed, Plaintiff appears to argue that the Officers should be held liable for any strip search that occurred because McDonald and Arroyo "were aware, at the time that they caused Plaintiff to be arrested, that he would necessarily be subjected to searches and/or strip-searches as he was 'processed' and taken through the 'system.'" (Pl. Opp. at 22.) This is an insufficient basis upon which to impose liability on Defendants. *See Hewitt v. City of New York,* No. 09 CV 214(RJD)(MDG), 2012 WL 4503277, at *10 (E.D.N.Y. Sept. 28, 2012) (granting summary judgment on unlawful strip search claim because plaintiff "fails to allege or provide any admissible evidence that any of the named defendants were personally involved in strip searching plaintiff."); *Caidor v. Harrington,* No. 5:05–CV–0297(GTS/GJD), 2009 WL 174958, at *4 (N.D.N.Y. Jan. 26, 2009) ("It bears noting that an officer does not become liable to an individual for an unlawful strip search simply because the strip search was conducted after the officer arrested the individual (and authored an arrest report and/or incident report). This is especially true where, as here, no admissible record evidence exists that the officer was present at the alleged strip search."). Defendants are therefore enti-

tled to summary judgment as to this cause of action as well.

### D. *Fabrication of Evidence (Denial of Constitutional Right to Fair Trial)*

■ When an officer gives false information about an arrestee to prosecutors he violates the arrestee's right to a fair trial. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997). Denial of the right to a fair trial is actionable under section 1983. "When a police officer creates false information likely to influence a [grand] jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Id.*

■ Plaintiff at no point alleges with specificity what false information McDonald or Arroyo created or forwarded to the D.A.'s Office. And, although Plaintiff alleges elsewhere in his memorandum that McDonald and Arroyo offered inconsistent testimony as to various details of the January 22 arrest, Plaintiff does not indicate whether he believes these alleged inconsistencies constitute evidence that the police officers falsified information. (*See* Pl. Opp. at 24 (asserting without elaboration that "there is ample evidence in the record that proves that defendants Hall, McDonald, and Arroyo created and/or forwarded false evidence to the [D.A.'s Office] … [and a]t the very least, an issue of fact exists that necessarily precludes the granting of summary judgment in the defendants' favor.").) In any event, Plaintiff's mere recitation of inconsistencies in certain officers' testimonies, without more, does not establish liability under section 1983 for providing false information to prosecutors. *See Hewitt*, 2012 WL 4503277, at *6 ("Plaintiff's recitation of

inconsistencies and inaccuracies in [undercover police officer's] buy reports, grand jury testimony, descriptions of the female suspect, and undercover audio recordings, do not support her argument that [the undercover police officer] fabricated evidence against her."); *see also id* (noting that when "the purported motivations grounded in animus and a clear disregard of duty attributed to [defendant police officers] constitute nothing more than unsubstantiated conjecture," such allegations are "insufficient to raise a *genuine* issue of material fact for trial.") (citation and internal quotation marks omitted).

### E. *Failure to Intervene/Intercede and Municipal Liability*

■ Plaintiff also asserts a claim against McDonald and Arroyo for their failure to intercede. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose *constitutional rights are being violated* in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (emphasis added). Because the court has not found that Plaintiff has raised a genuine issue of material fact that his "constitutional rights" were "violated" by McDonald or Arroyo under any theory, summary judgment is warranted as to this claim. *See Hewitt*, 2012 WL 4503277, at *10.

■ Plaintiff's claim for municipal liability against the City of New York fails for the same reason. In order to state a section 1983 claim against a municipality, a plaintiff must allege that the deprivation of his or her constitutional rights was caused by an official policy or custom of the municipality. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). When, as here, however, there is no underlying constitutional violation, there can be no municipal

liability. *Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Martinez v. City of New York*, 340 Fed. Appx. 700, 702 (2d Cir.2009) ("Because the arresting officers in this case did not violate plaintiff's constitutional rights, there can be no municipal liability even if plaintiff had alleged a specific policy or custom that led to his detainment.").

Finally, because the court has concluded that no constitutional violation occurred, it does not reach the issue of qualified immunity.

*Plaintiff's State Law Claims*

Because the court grants summary judgment as to all of Plaintiff's federal claims, it declines to reach his state law claims. *See Castellano v. Board of Trustees, et al.*, 937 F.2d 752, 758 (2d Cir.1991) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Plaintiff's state law claims are therefore dismissed without prejudice.

IV. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment [82] dismissing this action is GRANTED. The Clerk of Court is directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.