**Lazarus BENNETT, Plaintiff,**

v.

**P.O. Henry VIDAL, Tax ID No. 931378, Individually and in his Official Capacity, Sergeant Joseph Harnett, Tax ID No. 938641, Individually and in his Official Capacity, Defendants.**

15 Civ. 5116 (JGK)

United States District Court, S.D. New York.

Signed July 24, 2017

Filed 07/25/2017

John Joseph Meehan, Jon Louis Norinsberg, Law Offices of Jon L. Norinsberg, New York, NY, for Plaintiff.

Colin Mccann Ceriello, Linda Margareta Mindrutiu, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Lazarus Bennett, brought this action pursuant to 42 U.S.C. §§ 1983 and 1988 against Police Officer Henry Vidal ("Officer Vidal") alleging false arrest, malicious prosecution, and denial of the right to a fair trial.[1] Officer Vidal moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing all of the claims against him.

### I.

The following facts are undisputed unless otherwise indicated. On September 23, 2014, around 1:00 p.m., Officer Vidal was at a fixed post at 113th Street and Second Avenue in Manhattan when he observed four or five men chasing another individual. (56.1 Stmts. ¶ 1.)[2] One member of the group was waving a kitchen knife at the victim, while the others were yelling, "Get him! Get him!" (56.1 Stmts. ¶¶ 2, 4.)

Officer Vidal began to chase the group, and they ran through a housing project toward 3rd Avenue. (56.1 Stmts. ¶¶ 5–6.) One of the suspects then broke off and ran to the right while the rest continued straight toward 3rd Avenue. (56.1 Stmts. ¶ 7.) Officer Vidal testified that he observed the plaintiff to be the individual who ran to the right and that he observed him run into a building near the corner of 113th Street and 3rd Avenue, which was later identified as 2065 3rd Avenue. (56.1

Stmts. ¶¶ 8–9; Bennett Decl. ¶ 2.) The plaintiff maintains that he was never a member of the group and could not have entered the building at 2065 3rd Avenue because he did not have key access to that particular building. (Pl.'s 56.1 Stmt. ¶¶ 1–10; Bennett Decl. ¶¶ 7–8.) Officer Vidal followed the rest of the group toward 3rd Avenue, where he eventually apprehended "L.J.," who was later identified as the knife wielder. (56.1 Stmts. ¶¶ 10, 13–14, 27.)

At some point during the chase, Officer Vidal called for backup and put out a description over the radio. (56.1 Stmts. ¶ 11.) The description read "looking for 5MBS 1 has knife, all wrng hoodie—n 4 wrng blu jeans 1 wrng green jeans." (56.1 Stmts. ¶ 12.) On that day, the plaintiff, a black male, was wearing a black hoodie and blue sweatpants. (56.1 Stmts. ¶ 17.) When backup arrived, Officer Vidal turned L.J. over to another police officer and continued searching for the other suspects. (56.1 Stmts. ¶ 15.)

The plaintiff testified that he left his home, which was located at the corner of 3rd Avenue and East 115th Street, at 1:08 p.m., only minutes after Officer Vidal witnessed the group of men chasing the victim. (56.1 Stmts. ¶¶ 1, 16.) The plaintiff further stated that after he left his apartment, he cut through the housing projects located from 112th to 115th Streets on 3rd Avenue. (56.1 Stmts. ¶ 18; Pl.'s Dep. 27:13–31:15 and Exs. A and B.) Officer Vidal maintains that the plaintiff "cut

---

1. The plaintiff also brought a failure to intervene claim against another officer, Sergeant Joseph Harnett. In his opposition to the motion for summary judgment, the plaintiff "agree[d] to dismiss all claims against Sgt. Harnett." (Pl.'s Mem. Opp'n at 21.) Therefore, the claim against Sgt. Harnett is dismissed. Additionally, the plaintiff abandoned his malicious abuse of process claim at oral argument of the current motion. Therefore, the claim

against Officer Vidal for malicious abuse of process is dismissed. While the Second Amended Complaint alleges a claim for the denial of federal civil rights, the only remaining deprivations are the specific claims of false arrest, malicious prosecution, and the denial of the right to a fair trial.

2. Citations to "56.1 Stmts. ¶——" reflect facts that are not disputed.

through the exact building [he] believed he had seen plaintiff run into earlier," (Defs.' 56.1 Stmt. ¶ 19), but the plaintiff disputes ever entering or leaving that building. (Pl.'s 56.1 Stmt. ¶ 19; Bennett Decl. ¶¶ 6–10.)

After cutting through the projects, the plaintiff stopped to speak with his aunt, who had come out of her apartment after hearing the commotion of the chase. (56.1 Stmts. ¶ 29; Serrano Dep. 13:4–11, 20:2–13, 23:5–7.) Officer Vidal saw the plaintiff standing nearby and placed him under arrest at 1:29 p.m. (56.1 Stmts. ¶ 24.) According to Officer Vidal, he recognized the plaintiff to be one of the individuals chasing the victim earlier, and arrested the plaintiff after seeing him come from the building at 2065 3rd Avenue. (Defs.' 56.1 Stmt. ¶¶ 22–24.)

The plaintiff was charged with Attempted Gang Assault and Criminal Possession of a Weapon. (56.1 Stmts. ¶ 38.) Shortly after the plaintiff's arrest, his mother, Shanen Dora James, went to the police precinct where she inquired about her son. (56.1 Stmts. ¶ 34.) The plaintiff's mother did not tell any police officer that she had been with the plaintiff moments before Officer Vidal witnessed the knife chase. (56.1 Stmts. ¶ 36.) She eventually notified the plaintiff's attorney of this fact at the plaintiff's arraignment, and the plaintiff's attorney then told the assistant district attorney. (56.1 Stmts. ¶ 37.) At his arraignment, the plaintiff's bail was set at $5,700, an amount beyond his means, and the plaintiff was remanded to custody. (Meehan Decl. Ex. D.)

Two days later, the district attorney's office moved to dismiss all charges against the plaintiff, and he was released. (Meehan Decl. Ex. E.) Overall, the plaintiff spent approximately three days in jail.

## II.

The standard for granting summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify the material facts and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in

favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994); see also McKay v. City of N.Y., 32 F.Supp.3d 499, 502–03 (S.D.N.Y. 2014).

## III.

Officer Vidal moves for summary judgment on the plaintiff's false arrest claim based on qualified immunity.

■ Section 1983 claims for false arrest are "substantially the same" as false arrest claims under New York law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). In New York, false arrest claims require a showing that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Id. at 853 (citations omitted); see also Pelayo v. Port Auth., 893 F.Supp.2d 632, 639 (S.D.N.Y. 2012).

■ An arrest of a criminal suspect by a law enforcement officer with probable cause is a "privileged" confinement even if it is non-consensual. Decker v. Campus, 981 F.Supp. 851, 856 (S.D.N.Y. 1997). Thus, for arrests by law enforcement officers, "[t]he existence of probable cause to arrest constitutes a complete defense to an action for false arrest, whether that action is brought under Section 1983 or state law." Matthews v. City of N.Y., 889 F.Supp.2d 418, 433 (E.D.N.Y. 2012) (citation and internal quotation marks omitted); see also Weyant, 101 F.3d at 852; Biswas v. City of N.Y., 973 F.Supp.2d 504, 515 (S.D.N.Y. 2013).

■ An officer has probable cause for an arrest when at the time of the arrest "the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citation omitted); see also Garrett v. City of New York, No. 10-cv-2689 (JGK), 2011 WL 4444514, at *4 (S.D.N.Y. Sept. 26, 2011). Once the fact of a warrantless arrest has been established, the burden is on the arresting officer to prove probable cause for the arrest by a preponderance of the evidence. Garrett, 2011 WL 4444514, at *4.

■ Even if an officer did not have probable cause for an arrest, the officer may still be shielded from liability for false arrest under the doctrine of qualified immunity. Qualified immunity protects government officials performing discretionary functions, such as arrests, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see also Plumhoff v. Rickard, —— U.S. ——, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014); Ashcroft v. Iqbal, 556 U.S. 662, 672, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). "Requiring the alleged violation of law to be clearly established balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Wood v. Moss, —— U.S. ——, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014) (citation and internal quotation marks omitted). As the Supreme Court has ex-

plained, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citation omitted), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

 In the case of an arrest, an officer is entitled to qualified immunity if he had "arguable probable cause" to make the arrest, which means that "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (citation omitted). Arguable probable cause "focus[es] attention on the word 'clearly' established law" and shields an officer from liability "if reasonable officers could disagree as to what the law is." See Torraco v. Port Auth., 539 F.Supp.2d 632, 651 (E.D.N.Y. 2008), aff'd, 615 F.3d 129 (2d Cir. 2010); see also McKay, 32 F.Supp.3d at 505–06.

 The plaintiff argues that there are genuine disputes of material fact because—contrary to Officer Vidal's testimony—he was not involved in the knife chase and could not have entered or exited from the building at 2065 3rd Avenue. But even after viewing the facts in the light most favorable to the plaintiff and assuming that the plaintiff was not among the individuals involved in the knife chase, Officer Vidal still had arguable probable cause to arrest. The evidence indicates that Officer Vidal witnessed five black males in hoodies chasing the victim, four of whom were wearing blue pants. And there is no dispute that on the day in question, the plaintiff, a black male, was wearing a black hoodie and blue pants. And while the plaintiff disputes that he entered or exited the building on the corner of 113th Street and 3rd Avenue, he did testify at his deposition that he cut through the housing projects located in the area of 112th to 115th Streets on 3rd Avenue just prior to his arrest. Accordingly, the plaintiff was in close proximity to the place where the knife wielder was arrested, appeared within minutes after the knife chase, and was dressed in nearly identical clothing and matched the description of the suspects Officer Vidal witnessed participating in the knife chase.[3] See Hargroves v. City of N.Y., 411 Fed.Appx. 378, 385 (2d Cir. 2011) (summary order) (concluding that officer acted reasonably in arresting the plaintiffs based on the "totality of the circumstances," including factors such as the plaintiffs' race, the plaintiffs' "temporal and geographic proximity to the crime scene," and because the plaintiff's jacket "matched the description provided

3. The plaintiff's counsel attempts to liken this case to Perez v. Duran, 962 F.Supp.2d 533, 545 (S.D.N.Y. 2013), and in so doing, quotes Perez as stating that "the defendant arrested the plaintiff based solely on [his clothing]." (Pl.'s Mem. Opp'n at 11.) This misapprehends Perez, which in actuality states that "the defendant arrested the plaintiff based solely on a suspicious handshake with his father who was subsequently found to have drugs." 962 F.Supp.2d at 545. The actual facts in Perez are readily distinguishable from this case. In this case, the plaintiff matched the description of the knife-chase suspects personally ob-served by Officer Vidal, was wearing nearly identical clothing, and was apprehended in close proximity to the incident soon after the arrest of the knife-wielding suspect. In Perez, the defendant officer lacked probable cause to arrest because what the defendant officer observed was insufficient to establish probable cause to believe that a drug transaction had occurred. In this case, it is undisputed that Officer Vidal observed a crime, and the issue is whether he had arguable probable cause based on all the circumstances to believe that the plaintiff had participated in that crime.

by [the victim], even if the description of [the] jacket was not precisely accurate").

Accordingly, Officer Vidal had arguable probable cause to arrest the plaintiff because it was objectively reasonable for Officer Vidal to believe that probable cause existed, or that officers of reasonable competence could disagree on whether the probable cause test was met. See Amore, 624 F.3d at 536; see also Martinez v. City of N.Y., 340 Fed.Appx. 700, 701 (2d Cir. 2009) (summary order) ("If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if the police have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." (citing Hill v. California, 401 U.S. 797, 802–03, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971))); Ortiz v. Village of Monticello, No. 06-cv-2208(ER), 2012 WL 5395255, at *9 (S.D.N.Y. Nov. 2, 2012) (finding that police had probable cause for mistaken-identification arrest when arrest was based on eyewitness description); Seitz v. DeQuarto, 777 F.Supp.2d 492, 504 (S.D.N.Y. 2011) (similar); Hewitt v. City of N.Y., No. 09-cv-214 (RJD) (MDG), 2012 WL 4503277, at *4 (E.D.N.Y. Sept. 28, 2012), aff'd, 544 Fed.Appx. 24 (2d Cir. 2013) ("Mere misidentifications do not undermine probable cause; police officers are entitled to make reasonable mistakes when identifying suspects.")

The plaintiff argues in substance that the defendant must have falsified the arguable probable cause because the plaintiff was not in the group with the knife wielder; thus the defendant's testimony contradicted the testimony of the plaintiff and his mother. But that argument does not follow, and it would swallow up the cases that have found arguable probable cause despite a misidentification. Simply because an officer is mistaken in identifying the defendant as a person for whom there is

probable cause to arrest does not mean that the officer has invented the basis for the arrest so long as the officer can show the probable cause for the arrest. The arrestee's demonstration that the identification was mistaken does not eliminate the showing of probable cause or arguable probable cause.

The plaintiff's reliance on Flores v. City of Mount Vernon, 41 F.Supp.2d 439 (S.D.N.Y. 1999), is misplaced. In Flores, the plaintiff—who was never identified by anyone as a potential suspect in a crime—was searched and arrested primarily because a number of patrons of the restaurant at which she bartended were arrested with cocaine on their persons. Id. at 441–42. Here, by contrast, Officer Vidal allegedly mistakenly believed that he saw the plaintiff among a group of people chasing and encouraging a knife-wielding assailant to attack the victim, thereby establishing arguable probable cause that the plaintiff had committed a crime. See N.Y. Penal Law § 265.01 ("A person is guilty of criminal possession of a weapon in the fourth degree when . . . he . . . possesses any . . . dangerous knife . . . with intent to use the same unlawfully against another."); N.Y. Penal Law § 20.00 ("[A]nother person is criminally liable for [another's criminal] conduct when, acting with the mental culpability required . . . he . . . importunes, or intentionally aids such person to engage in such conduct.").

The plaintiff maintains that Officer Vidal's radio description of four black males wearing blue jeans and hoodies was too generic to establish probable cause to arrest the plaintiff, but this ignores the fact that Officer Vidal also personally observed the knife chase occur. Rather than relying on a generic radio description to arrest the plaintiff, Officer Vidal was also relying on his own observation—albeit allegedly mistaken—of seeing the plaintiff among the

suspects involved in the knife chase, seeing the plaintiff run into 2065 3rd Avenue when the knife-chase suspects split up, and then seeing the plaintiff in close proximity to the knife wielder at about the time that suspect was arrested. Officer Vidal's personal observation of the knife chase makes this case easily distinguishable from the cases relied upon by the plaintiff. See, e.g., Dancy v. McGinley, 843 F.3d 93, 101, 108–09 (2d Cir. 2016) (concluding that there was no reasonable suspicion to stop an individual based only on a vague radio description of the suspect); Jenkins v. City of N.Y., 478 F.3d 76, 91 (2d Cir. 2007) (determining that it was error to find probable cause based on a general description of a suspect provided several days before an arrest in an apartment that was not significant for determining probable cause).

■ The plaintiff also contends that the subsequent dismissal of the charges against him "in itself[ ] refutes probable cause." (Pl.'s Mem. Opp'n at 11.) However, "[w]hen determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (citation omitted) (concluding that, even though charges were subsequently dismissed with prejudice, arguable probable cause existed to justify an arrest); see also Phillips v. Corbin, 132 F.3d 867, 869 (2d Cir. 1998) (per curiam) (concluding that a "grand jury's refusal to indict . . . does not, as a matter of law, establish that the officers lacked probable cause to arrest"); Nadal v. City of Yonkers, No. 96-2412, 1996 WL 721536, at *2 (2d Cir. Dec. 16, 1996) (same); Camarano v. City of N.Y., 646 F.Supp. 246, 250 (S.D.N.Y. 1986) (court's dismissal of a charge is not relevant to the issue of probable cause and arrest).

The statements by the plaintiff's mother in support of the plaintiff's statement that he was home during the chase do not undercut arguable probable cause. It is undisputed that the plaintiff's mother did not notify Officer Vidal or any other police officer that the plaintiff was with her in the moments before the knife chase, because she did not notify anyone of this fact until the plaintiff's arraignment. Accordingly, the fact that the charges against the plaintiff were ultimately dismissed does not refute the existence of arguable probable cause. See Betts, 751 F.3d at 83 ("Given the facts available to the officers, it was objectively reasonable for the officers to believe that probable cause existed." (alteration deleted)(citation omitted)).

In sum, Officer Vidal had arguable probable cause to arrest the plaintiff and is therefore entitled to qualified immunity on the plaintiff's false arrest claim.

## IV.

· ■ Officer Vidal moves for summary judgment dismissing the plaintiff's claim for malicious prosecution based on qualified immunity.

■ To establish a claim for malicious prosecution under § 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York state law, as well as a violation of the plaintiff's rights under the Fourth Amendment. Manganiello v. City of N.Y., 612 F.3d 149, 160–61 (2d Cir. 2010). A claim for malicious prosecution under New York state law requires "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 161 (internal citation and quotation marks omitted). A claim for ma-

licious prosecution under § 1983 requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000); see also Perez, 962 F.Supp.2d at 540.

The existence of probable cause is a complete defense to a claim of malicious prosecution in New York. Manganiello, 612 F.3d at 161–62; Cooper v. City of New Rochelle, 925 F.Supp.2d 588, 611 (S.D.N.Y. 2013). Indeed, "a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." Carson v. Lewis, 35 F.Supp.2d 250, 263 (E.D.N.Y. 1999) (citation omitted); see also Cooper, 925 F.Supp.2d at 611; Dukes v. City of New York, 879 F.Supp. 335, 342 (S.D.N.Y. 1995).

Similarly, an officer is entitled to qualified immunity against a claim of malicious prosecution if the officer had arguable probable cause to arrest the plaintiff. See Betts, 751 F.3d 78 at 83. "[B]ecause the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come [into] play" when there is arguable probable cause. Bonide Prods., Inc. v. Cahill, 223 F.3d 141, 146 (2d Cir. 2000) (per curiam) (citation omitted). Thus, an officer who is objectively reasonable in believing he has probable cause to arrest is entitled to qualified immunity on a claim for malicious prosecution "regardless of [any] allegations of malicious motivation," id., as long as the officer does not learn of facts after the arrest "that would negate his ... earlier determination of probable cause," Cooper, 925 F.Supp.2d at 611; see also McKay, 32 F.Supp.3d at 511.

As explained above, Officer Vidal had arguable probable cause to arrest the plaintiff. And there was no evidence presented to suggest that Officer Vidal subsequently learned of facts after the arrest that would negate his belief that he had arguable probable cause, because it was not until the plaintiff's arraignment that anyone was notified that the plaintiff was allegedly with his mother at home during the time of the knife chase. Officer Vidal is therefore entitled to qualified immunity against the plaintiff's claim of malicious prosecution. See McKay, 32 F.Supp.3d at 511–12.

## V.

Finally, the defendants move for summary judgment on the plaintiff's claim for the denial of a right to a fair trial.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997); Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003); Jovanovic v. City of New York, 486 Fed. Appx. 149, 152 (2d Cir. 2012) (summary order); see also O'Neal v. City of N.Y., 196 F.Supp.3d 421, 428–29 (S.D.N.Y. 2016), aff'd sub nom. O'Neal v. Morales, 679 Fed. Appx. 16 (2d Cir. 2017) (summary order). The Court of Appeals has held that a § 1983 plaintiff may sue an officer for denial of a right to fair trial based on the fabrication of evidence when the allegedly fabricated evidence "is the officer's own account of his or her observations of alleged criminal activity, which he ... then conveys to a prosecutor." Garnett v. Undercover Officer C0039, 838 F.3d 265, 274

(2d Cir. 2016). Probable cause to arrest is not a defense to denial of a right to fair trial. Ricciuti, 124 F.3d at 130.

 "In order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors; and the false information was likely to influence a jury's decision." Garnett, 838 F.3d at 279–80.

The plaintiff contends that, rather than being mistaken, Officer Vidal intentionally lied to the assistant district attorney regarding his recollection about seeing the plaintiff participate in the knife chase. As evidence of fabrication, the plaintiff points only to the differences in the deposition testimony of Officer Vidal and his account of what he saw and the deposition testimony of the plaintiff and his mother regarding the plaintiff's whereabouts around the time of the incident. But a mere difference in testimony between the defendant, the plaintiff, and the plaintiff's mother of what occurred on the day of the arrest is not sufficient evidence to create a genuine dispute of material fact as to whether Officer Vidal intentionally falsified information or fabricated evidence. See Waddlington v. City of N.Y., 971 F.Supp.2d 286, 297 (E.D.N.Y. 2013) ("Plaintiff's mere recitation of inconsistencies in certain officers' testimonies, without more, does not establish liability under section 1983 for providing false information to prosecutors."); Hewitt, 2012 WL 4503277 at *6, *11 (granting summary judgment because the "[p]laintiff points ... to no evidence of ill will or malice on the part of the [officer]" and "no arguable motivation to fabricate"); see also Greene v. City of N.Y., No. 08-cv-243 (AMD) (CLP), 2017 WL 1030707, at *25 (E.D.N.Y. Mar. 15, 2017), appeal filed, No. 17–1920 (2d Cir. June 16, 2017) (granting summary judgment on a denial of the right to a fair trial claim because the contention that officers deliberately falsified evidence was based on "sheer speculation, and [did] not create a material issue of fact for trial").

The plaintiff relies on Ricciuti, 124 F.3d at 126, but that case is easily distinguishable. Ricciuti involved allegations of a falsified confession, where the plaintiff denied ever confessing and the co-plaintiff testified that he was with the plaintiff through the entire incident and never saw the plaintiff confess. Id. The confession was also memorialized in an unsigned memorandum, and when the officer who allegedly authored the memorandum was questioned at his deposition, he admitted that "he might have written the memorandum, but could not recall [the plaintiff] making the specific statement attributed to him." Id. Another officer co-defendant also admitted in his deposition that "he would have made a notation in his notebook had such a statement been made in his presence, but there was no such notation." Id. The defendant in Ricciuti could not have mistakenly imagined the accused's statement that was allegedly fabricated. Accordingly, there was significantly more evidence of falsified information in Ricciuti than here, where there are simply inconsistencies between Officer Vidal's account of his observations and the plaintiff's and his mother's testimony of the plaintiff's whereabouts.

The plaintiff's reliance on Garnett, 838 F.3d at 275, is similarly unpersuasive. Garnett affirmed the denial of a post-trial motion for judgment as a matter of law after a jury found that a police officer had fabricated an account of a drug sale purportedly involving the plaintiff. Id. at 270, 273–74, 281. And there, the plaintiff pre-

sented evidence that the defendant officer had a somewhat unique motive to lie; the plaintiff and the defendant officer had previous interactions years before the plaintiff's arrest, in which the plaintiff assaulted the officer and held a gun to the officer's head during the course of that assault. Garnett v. Undercover Officer C0039, No. 13-cv-7083 (GHW), 2015 WL 1539044, at *2 (S.D.N.Y. Apr. 6, 2015), aff'd, 838 F.3d 265 (2d Cir. 2016). Here, there is no evidence suggesting that Officer Vidal had a motive to falsify information in order to secure an indictment of the plaintiff.

In sum, this is not a case where the plaintiff has presented evidence indicating that an officer falsified information or fabricated evidence sufficient to defeat a motion for summary judgment. Cf., e.g., Robinson v. City of N.Y., No. 15-cv-5850 (LGS), 2017 WL 2414811, at *2 (S.D.N.Y. June 2, 2017) (denying summary judgment when witness signed two declarations recanting statement that he had bought drugs from the plaintiff and testified at his deposition that a police officer promised to release the witness from custody if the witness stated that he had purchased drugs from the plaintiff); Harris v. City of N.Y., 222 F.Supp.3d 341, 351–52 (S.D.N.Y. 2016) (denying summary judgment after police officer told a prosecutor that the plaintiff "possessed" a weapon, even though the plaintiff did not have it on his person, and was not wearing and denied owning the jacket in which it was found).

In this case, all that the plaintiff has adduced, construing the evidence in the plaintiff's favor, is that the defendant officer was mistaken in identifying him as a participant in the knife wielding group. There is no evidence that the defendant deliberately misidentified the plaintiff and thereby fabricated a false identification for the prosecutor.

Accordingly, the defendants' motion for summary judgment on the plaintiff's claim of denial of a right to a fair trial is granted.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendants' motion for summary judgment is **granted.** The Clerk is directed to enter judgment dismissing the complaint and closing this case.

**SO ORDERED.**